United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREW MARK SMIGELSKI,
Plaintiff,

v.

OPENAI OPCO, LLC, et al.,
Defendants.

Case No. 26-cv-10641-TSH

**ORDER GRANTING PLAINTIFF'S APPLICATION TO PROCEED IN FORMA PAUPERIS AND SCREENING COMPLAINT UNDER 28 U.S.C. § 1915**

## I. INTRODUCTION

On September 17, 2026, Plaintiff Andrew Mark Smigelski filed a complaint (ECF No. 1) and an application to proceed in forma pauperis (ECF No. 2). For the reasons stated below, the Court **GRANTS** the application but finds the complaint deficient under 28 U.S.C. § 1915(e). Plaintiff must file a first amended complaint by November 12, 2026, curing the deficiencies identified in this screening order. The Court advises Plaintiff that failure to cure these deficiencies could lead to dismissal of this case.

## II. BACKGROUND

Plaintiff is a United States citizen who currently resides in Medellín, Colombia "for safety reasons related to documented FBI retaliation." Compl. ¶ 9, ECF No. 1. He operates multiple businesses, including gunshowschedules.com, sourceglp-1.com, and Scout Theory LLC. *Id.* ¶ 10. Plaintiff's complaint names seven sets of defendants: OpenAI OpCo, LLC and OpenAI Group PBC (together, OpenAI); ChatGPT, described in the caption as an "artificial intelligence system"; Sam Altman, OpenAI's Chief Executive Officer, in his individual capacity; the Federal Bureau of Investigation (FBI); U.S. Immigration and Customs Enforcement (ICE); and John Does 1–20.

Compl. at 1. Plaintiff alleges Does 1–10 are FBI or ICE personnel and Does 11–20 are OpenAI personnel. *Id.* ¶ 17. Plaintiff does not name the United States and seeks no money damages against FBI or ICE. *Id.* ¶¶ 15–16, 18.

The complaint alleges the following. Plaintiff has used ChatGPT since May 26, 2023 and has been a paid ChatGPT Pro subscriber since March 30, 2025. *Id.* ¶¶ 10, 56. On October 6, 2025, ChatGPT declined Plaintiff's request to generate a satirical post about the Bureau of Alcohol, Tobacco, Firearms and Explosives, stating it could not "create or host content that targets or mocks a specific government agency or its employees." *Id.* ¶¶ 24-27. ChatGPT then offered to help Plaintiff "rewrite it as a humor piece" that would be "framed safely" as "10 Things Gun Owners Wish the ATF Did Better." *Id.* ¶ 28. On October 29 Plaintiff sent OpenAI a "security disclosure" describing that refusal. *Id.* ¶ 31. OpenAI sent four acknowledgments, one of which stated that Plaintiff could "expect to receive communication from a specialist soon," but no specialist contacted him. *Id.* ¶¶ 35–41.

On January 17, 2026, at Plaintiff's request, ChatGPT generated approximately 400 domain names critical of ICE. *Id.* ¶¶ 44–48. Approximately twelve hours later, on January 18, OpenAI emailed Plaintiff a notice identifying activity "not permitted under our policies for: Fraudulent Activities" and warning that OpenAI might deactivate his access. *Id.* ¶¶ 49–51. The notice informed Plaintiff he could reply to the email to initiate an appeal. *Id.* ¶ 52. Plaintiff appealed twice but received no response. *Id.* ¶¶ 53–55.

In March 2026 Plaintiff asked OpenAI whether any legal restriction or government process affected its ability to communicate with him, and whether it had received National Security Letters concerning his account. *Id.* ¶¶ 59-60. OpenAI responded that it lacked visibility into and authority to comment on such matters. *Id.* ¶¶ 60–63.

Plaintiff alleges upon information and belief that the FBI, ICE, or their personnel caused or coordinated the account flag in retaliation for a Freedom of Information Act request and a prior lawsuit, *Smigelski v. FBI*, No. 2:25-cv-01013 (S.D. Ohio). *Id.* ¶¶ 19–23, 71–77, 105. He pleads in the alternative that OpenAI's internal systems flagged the conversation after the fact, or that ChatGPT itself autonomously reported him. *Id.* ¶ 67.

The complaint asserts eight counts: (I) Fourth Amendment unreasonable search and seizure under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Does 1–10; (II) First Amendment viewpoint discrimination and retaliation, seeking declaratory and prospective injunctive relief against FBI, ICE, Does 1–10 in their official capacities, and OpenAI as a joint actor; (III) conspiracy to deprive civil rights under 42 U.S.C. § 1985(3) against all defendants; (IV) breach of contract against OpenAI; (V) breach of the implied covenant of good faith and fair dealing against OpenAI; (VI) defamation per se against OpenAI and Altman; (VII) violations of the Stored Communications Act, 18 U.S.C. §§ 2701, 2702, 2707, against OpenAI and Does 1–10; and (VIII) declaratory judgment against OpenAI, ChatGPT, FBI, and ICE. *Id*. ¶¶ 97–139.

## III. IN FORMA PAUPERIS APPLICATION

A district court may authorize the start of a civil action in forma pauperis if the court is satisfied the would-be plaintiff cannot pay the filling fees required to pursue the lawsuit. *See* 28 U.S.C. § 1915(a)(1). Plaintiff submitted the required documentation demonstrating an inability to pay the costs of this action, and it is evident from the application that the listed assets and income are insufficient to enable payment of the fees. Accordingly, the Court **GRANTS** the application to proceed in forma pauperis.

## IV. SUA SPONTE SCREENING UNDER 28 U.S.C. § 1915(e)(2)

### A. Legal Standard

A court must dismiss an in forma pauperis complaint before service of process if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted). As such, the complaint must allege facts that plausibly establish each defendant's liability. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, the Court must "take as true all allegations of material fact stated in the complaint and construe them in the light most favorable to the plaintiff." *Watison*, 668 F.3d at 1112 (citation omitted). The Court must also "construe a pro se plaintiff's pleadings liberally and afford the petitioner the benefit of any doubt." *Id.* (cleaned up). However, the Court "may not supply essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

**B. Application**

**1. Rule 8**

Under the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The failure to comply with Rule 8 is a basis for dismissal that is not dependent on whether the complaint is without merit. *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written . . . without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *Id.* at 1180. To comply with Rule 8, a complaint need not provide detailed factual allegations, but it is "a plaintiff's obligation to provide the grounds of his entitlement to relief." *Twombly*, 550 U.S. at 555 (cleaned up). A plaintiff must do more than assert "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, the plaintiff must provide sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 570.

Plaintiff is self-represented, so the Court construes the pleadings liberally and affords Plaintiff the benefit of the doubt. *Watison*, 668 F.3d at 1112. However, this does not relieve Plaintiff of conformity to the pleading rules. *See, e.g.*, *Romano v. U.S. Army Core of Eng'rs*, 2017 WL 6448221, at *1 (N.D. Cal. Dec. 18, 2017).

The Ninth Circuit has held that "shotgun pleadings," where "a party indiscriminately incorporates assertions from one count to another," can serve as a basis for dismissal under Rule 8. *Gibson v. City of Portland*, 165 F.4th 1265, 1288–90 (9th Cir. 2026); *see id.* at 1290. Thus,

pleadings "that fail to provide the opposing parties and the district court with sufficient notice of the claims and their basis" fail under Rule 8. *Id.* at 1290. Importantly, "district courts do not have to accept such shotgun pleadings. It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts." *Id.* at 1289.

There are four main types of shotgun pleadings:

> (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to be a combination of the entire complaint; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* at 1288 (quoting 35A C.J.S. *Fed. Civ. Proc.* § 310 (2025) and citing 61A Am. Jur. 2d *Pleading* § 159 (2025)). "[T]he problem with shotgun pleadings is that they make it difficult, if not impossible, for the opposing party to formulate a response." *Id.* (citation omitted). "But the defendant is not the only interested party affected. Shotgun pleadings waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Id.* (cleaned up; citation omitted).

Applying this framework, the Court finds Plaintiff's complaint does not comply with Rule 8. First, the complaint uses incorporation by reference across all eight counts. Compl. ¶¶ 97, 102, 108, 113, 117, 120, 129, 135. By Count VIII, that incorporation sweeps in all 134 preceding paragraphs, "causing each successive count to be a combination of the entire complaint." *Gibson*, 165 F.4th at 1288. Within each count, Plaintiff does not identify which of the incorporated allegations supply which element of which claim. Rule 10(b) and (c) permit incorporation by reference, but when it is used indiscriminately it becomes a shortcut that violates Rule 8. *Id*. at 1290. "Factual allegations, however detailed, must be tied to corresponding causes of action." *Id.* at 1293. As such, the Court finds the complaint fails to comply with Rule 8. *See Powell v. Young Cmty. Devs.*, 2026 WL 699616, at *4 (N.D. Cal. Mar. 12, 2026) (finding complaint did not comply

with Rule 8 where the plaintiff "recites his factual allegations, but at no point does he tie these allegations to his multiple claims, leaving the reader to guess as to which facts are tied to which allegations and against which defendant(s)."); *Castaneda v. 6939 Fair Oaks Blvd TIC LLC*, 2026 WL 734453, at *3 (E.D. Cal. Mar. 16, 2026), *report and recommendation adopted*, 2026 WL 2428903 (E.D. Cal. Aug. 19, 2026) (complaint did not comply with Rule 8 because "Plaintiffs SAC contains 10 counts and each realleges and incorporates all prior paragraphs."); *Kawamura v. Mammoth Hosp.*, 2026 WL 710311, at *7 (E.D. Cal. Mar. 13, 2026), *report and recommendation adopted*, 2026 WL 2286456 (E.D. Cal. Aug. 7, 2026) (complaint did not comply with Rule 8 because where Plaintiff "reallege[d] and incorporate[d] herein by reference all preceding paragraphs as though fully set forth herein.").

Plaintiff's complaint also asserts multiple claims against multiple defendants, but for each claim he fails to specify the allegations that apply to each defendant. For instance, Count III is asserted against "ALL DEFENDANTS" and alleges "Defendants conspired to deprive Plaintiff of equal protection," followed by a list of "overt acts" attributed to no particular defendant. Count II is asserted against FBI, ICE, Does 1–10, and "OpenAI as joint actor" without stating which defendant took which act. Count VII alleges in a single paragraph that "John Does 1–10 intentionally accessed, or caused OpenAI to disclose," Plaintiff's communications, Compl. ¶ 132, without distinguishing between two very different theories or between the two sets of actors. A complaint that "asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" is a shotgun pleading. *Gibson*, 165 F.4th at 1288. Blanket allegations that all defendants assisted the others to perform all alleged violations are not sufficiently specific to place the defendants on notice of the allegations against them. A plaintiff must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("When reading [plaintiff's] brief, one wonders if [plaintiff], in its own version of the spaghetti approach, has heaved the entire contents of a pot against the wall in hopes that something would stick. We decline, however, to sort through the noodles in search of [plaintiff's] claim."). As currently pled, a putative defendant would not know

where to begin in responding.

Thus, to comply with Rule 8's pleading requirement, Plaintiff must amend the complaint to allege: (1) the specific laws or rights that you think the defendant(s) violated; (2) for each law or right, state the specific factual allegations that connect each defendant with the alleged wrongdoing, including the dates, the names of people involved, and what those people did to you; (3) how you were harmed; and (4) what relief you seek.

2. **The Allegations of Government Involvement Are Conclusory**

Counts I, II, III, and VII and the claim that OpenAI acted jointly with federal personnel depend in material part on alleged federal involvement in the January 2026 account warning or access to Plaintiff's communications. Every allegation to that effect is pleaded upon information and belief, and all of them rest on a single fact: that the flag arrived approximately twelve hours after Plaintiff used ChatGPT to generate domain names critical of ICE. Plaintiff identifies the timing of the warning, his earlier FOIA activity, and his earlier litigation as circumstances supporting his inference of coordination. Compl. ¶¶ 19–23, 49–55, 65–81, 99, 105, 132–33. He does not, however, identify an actual government request, communication, access, or disclosure concerning his OpenAI account.

A complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. An allegation that defendants acted in concert must be supported by "enough factual matter (taken as true) to suggest that an agreement was made"; allegations of sequential or parallel conduct, without "further factual enhancement," stop "short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 556–57.

Plaintiff pleads no communication between any federal defendant and OpenAI, such as some type of directive, request, threat, or inducement, and no channel through which any such communication occurred. He pleads that when he asked OpenAI in March 2026 whether it had received legal process concerning his account, OpenAI answered that it could not confirm, deny, or comment. Compl. ¶¶ 62–63. Plaintiff acknowledges he "pleads this exchange not as an

admission that any such legal process exists" *id.* ¶ 64, appearing to confirm that the coordination theory rests on no factual matter at all. Further, temporal proximity alone does not make the inference plausible, particularly where Plaintiff himself pleads two innocent alternatives: that OpenAI's "internal systems flagged the conversation after the fact," or that "ChatGPT itself autonomously reported Plaintiff." *Id.* ¶ 67(b)–(c). Because he pleads no facts making the government-coordination explanation more likely than the innocent ones he offers, coordination with the government is not a plausible conclusion. *See Iqbal*, 556 U.S. at 681–82 (allegations "consistent with" an unlawful purpose did "not plausibly establish this purpose" where an "obvious alternative explanation" for the same facts was more likely).

Allegations made on information and belief may be permissible when facts are within another party's control, but they still must be grounded in facts supporting a plausible inference of liability. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 556–57. If Plaintiff amends, he should identify the factual basis (not legal conclusions) for believing a particular federal actor requested or obtained particular account information, or directed particular moderation activity. The mere temporal sequence and OpenAI's statement that it could not comment on governmental requests do not, without more, establish those events.

### 3. State Action

As to Plaintiff's claims under the First and Fourth Amendments, these constrain governmental conduct, not private conduct. A private entity may be treated as a state actor "in a few limited circumstances — including, for example, (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (cleaned up). In *Manhattan*, the Court held that "merely hosting speech by others is not a traditional, exclusive public function and does not alone transform private entities into state actors subject to First Amendment constraints." *Id.* The required nexus exists only where the government "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). "Mere approval of

or acquiescence in the initiatives of a private party" is not enough. *Id*. at 1004–05.

The Ninth Circuit has applied these principles to the flagging of user content. In *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023), a state official's office flagged a user's post to Twitter, which then limited access to his posts and suspended his account. The court held that Twitter was not a state actor because it "complied with the request under the terms of its own content-moderation policy and using its own independent judgment," and the State "did nothing more than make a request with no strings attached." *Id*. at 1158. The court further held that the plaintiff's § 1985 claim failed for the same reason, because proving a conspiracy between a private party and the government under § 1985 tracks the joint-action inquiry. *Id*. at 1160.

Here, the January 18 notice cites OpenAI's "Fraudulent Activities" policy and offers an appeal process. Compl. ¶¶ 49–55. Plaintiff does not plead facts showing federal direction or a specific agreement concerning that warning or the October 2025 refusal to generate a post. His belief that OpenAI applied its policies incorrectly is not itself a basis for treating OpenAI as a governmental actor. Nor does Plaintiff's reliance on OpenAI's general "AI safety" relationships with federal agencies, *id*. ¶¶ 74–75, 81, close the gap. A close or regulated relationship with government does not convert a private party's independent decisions into state action. *Blum*, 457 U.S. at 1004–05. If Plaintiff chooses to amend these allegations, he must identify nonconclusory facts linking federal defendants to the particular challenged moderation or disclosure. *See, e.g., Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024) ("To state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech.").

4. **ChatGPT as a Named Defendant**

The complaint also names "ChatGPT," described as an artificial intelligence system, as a separate defendant. Compl. ¶ 13. For a party that is neither an individual nor a corporation, capacity to sue or be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3); *see Shaw v. Cal. Dep't of Alcoholic Beverage Control,* 788 F.2d 600, 605 (9th Cir. 1986). The complaint does not identify any statute or other source conferring separate legal

capacity on the software system. Plaintiff may allege legally attributable conduct by the persons or entities responsible for a system, but describing the system as autonomous does not, without more, make the system an independent suable person. If Plaintiff continues to name ChatGPT as a defendant, he must identify a legally cognizable basis for its capacity and liability.

5. **Individual Claims**

a. **Count I: Fourth Amendment (*Bivens*)**

Count I asks the Court to recognize a *Bivens* damages remedy against Does 1–10 for obtaining or monitoring stored ChatGPT communications. Compl. ¶¶ 97–101. In *Bivens*, the Supreme Court held that it had authority to create "a cause of action under the Fourth Amendment" against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations. 403 U.S. at 397. Since *Bivens*, the Court has recognized implied *Bivens* damages actions in only three contexts: a Fourth Amendment home search and arrest, a Fifth Amendment employment-discrimination claim, and an Eighth Amendment prison medical-care claim. *See Egbert v. Boule*, 596 U.S. 482, 490–92 (2022). "The proper test for determining whether a claim presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017); *Egbert*, 596 U.S. at 492–93. The Supreme Court has "emphasized that recognizing a cause of action under *Bivens* is 'a disfavored judicial activity." *Ziglar*, 582 U.S. at 122.

Count I arises in a new context. While *Bivens* involved a warrantless search of a home and an arrest by federal narcotics agents, Plaintiff alleges no physical search or seizure. He instead alleges unidentified federal personnel "obtained, monitored, or caused to be disclosed" the contents of communications held by a private company. Compl. ¶ 99. That differs meaningfully from *Bivens*, as Count I would extend *Bivens* to acquisition or monitoring of communications maintained by a private platform, rather than a physical home search and arrest. Congress separately addressed unlawful access and disclosure in the Stored Communications Act, providing a civil remedy against persons and entities other than the United States under 18 U.S.C. § 2707(a), and an administratively conditioned damages remedy against the United States under § 2712(a)–

(b). Those statutory remedial choices counsel against implying a new *Bivens* remedy. *Egbert*, 596 U.S. at 492–93. Count I therefore fails as pleaded both because no identified federal actor's participation is plausibly alleged and because the requested *Bivens* extension is unavailable under the governing framework. Plaintiff may amend to clarify facts and any legally available claim, but merely restating his proposed new *Bivens* theory will not cure the remedial defect.

**b. Count II: Prospective Relief Against FBI, ICE, and Federal Does**

Count II seeks declaratory and prospective injunctive relief for alleged First Amendment retaliation and viewpoint discrimination. Compl. ¶¶ 102–07. But this raises standing issues. Article III standing requires a concrete injury fairly traceable to a defendant and redressable by the requested relief. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408–10 (2013). Past conduct alone does not establish standing for an injunction absent a real and immediate threat of recurrence or continuing adverse effects. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). A plaintiff seeking prospective relief must show that the threatened injury is "certainly impending," and "allegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (cleaned up). For example, in *Clapper*, the Supreme Court rejected a surveillance-based theory of standing that depended on a "speculative chain of possibilities." *Id.* at 414.

Plaintiff describes the October 2025 response and January 2026 warning, but he does not plead facts showing that FBI or ICE caused either event, that either agency currently monitors his account, or that a similar injury is certainly impending. Compl. ¶¶ 24–28, 49–55, 102–07. He also does not identify an ongoing account restriction or other concrete present effect that the requested prospective relief would remedy. As pleaded, the requested relief rests on precisely the speculative chain *Clapper* rejected, and it rests on the conclusory conspiracy allegations addressed above. If Plaintiff amends, he must plead the present or threatened injury, the involvement of each federal defendant, and how the specific relief requested would redress that injury. The First Amendment allegations against OpenAI also require facts sufficient to establish governmental action.

For nonmonetary relief against federal agencies, Plaintiff invokes 5 U.S.C. § 702. Compl. ¶¶ 7, 107. That provision waives sovereign immunity for qualifying requests for relief other than

money damages, subject to other limitations, but it does not dispense with Article III standing or supply an independent cause of action. The complaint also names federal Does individually for damages on Count I and officially for prospective relief on Count II. Any amendment should distinguish individual from official capacity and identify the relief sought from each.

**c. Count III: 42 U.S.C. § 1985(3)**

Count III alleges a conspiracy among all named defendants to deprive Plaintiff of his civil rights. Compl. ¶¶ 108-12. "Section 1985 proscribes conspiracies to interfere with certain civil rights." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). There must be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The Supreme Court has construed that element narrowly so that a "class" means something more than a group of people who share a desire to engage in the conduct the defendants disfavor. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993). In the Ninth Circuit, a claim under § 1985(3) requires either "that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). Further, "[a] claim under [§ 1985] must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi*, 839 F.2d at 626.

Plaintiff alleges the conspiracy targeted him for exercising First Amendment rights. Compl. ¶ 110. That does not identify a qualifying class under § 1985(3), and he pleads no facts supporting an agreement among identified defendants. *See Bray*, 506 U.S. at 269 ("Whatever may be the precise meaning of a 'class' for purposes of *Griffin*'s speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered

with."); *Sever*, 978 F.2d at 1536; *Karim-Panahi*, 839 F.2d at 626. To amend this count, Plaintiff would need to identify a legally cognizable class, facts supporting class-based invidious animus, the particular agreement and participation of each defendant, and an injury caused by an act in furtherance of the alleged conspiracy.

**d. Count VII: Stored Communications Act**

Count VII alleges unlawful access to, and disclosure of, stored communications and subscriber information under 18 U.S.C. §§ 2701–02. Compl. ¶¶ 129–34. The SCA creates a private cause of action for certain knowing or intentional violations of the Act. 18 U.S.C. § 2707(a); *see Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 874 (9th Cir. 2002). Section 2701(a) addresses intentional unauthorized access to a covered facility and acquisition, alteration, or prevention of access to communications in electronic storage. Section 2702(a) regulates specified disclosures by qualifying providers of electronic communication or remote computing services; it distinguishes communication contents from subscriber records.

The SCA is not a general federal privacy statute. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1022 (N.D. Cal. 2012). It regulates two different categories of service providers: providers of "electronic communication service" (ECS) and providers of "remote computing service" (RCS). 18 U.S.C. § 2702(a). An ECS is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). An RCS is "the provision to the public of computer storage or processing services by means of an electronic communications system." 18 U.S.C. § 2711(2). Whether a provider is acting as an ECS, an RCS, or neither is context dependent and turns in part on the provider's role with respect to the particular information allegedly disclosed. *Low*, 900 F. Supp. 2d at 1022–24; *see also Quon v. Arch Wireless Operating Co.*, 529 F.3d 892, 901–02 (9th Cir. 2008), *rev'd in part on other grounds by City of Ontario v. Quon*, 560 U.S. 746 (2010)). Under the SCA, "a person or entity" (1) "providing remote computing service to the public" (2) "shall not knowingly divulge to any person or entity the contents of any communication" (3) "which is carried or maintained on that service . . . on behalf of, and received by means of electronic transmission from . . . a subscriber or customer of such service" (4) "solely for the purpose of providing storage or computer processing

services to such subscriber or customer." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1104 (9th Cir. 2014).

Plaintiff alleges "OpenAI is a provider of electronic communication service and remote computing service to the public" and that his ChatGPT conversations are stored electronic communications. Compl. ¶¶ 130–31. Those are legal conclusions, not factual allegations, and the Court need not accept them as true. *See Iqbal*, 556 U.S. at 678. If Plaintiff elects to replead an SCA claim, he must allege plausible facts showing why OpenAI was acting as an ECS or RCS with respect to the particular communications or information that Plaintiff alleges OpenAI disclosed. For an ECS theory, Plaintiff should allege facts showing that the relevant ChatGPT service provided him the ability to send or receive electronic communications and that the particular communications at issue were in "electronic storage by that service." *See* 18 U.S.C. §§ 2510(15), 2510(17), 2702(a)(1). For an RCS theory, Plaintiff should allege facts showing that, with respect to the particular communications at issue, OpenAI provided computer storage or processing services to the public by means of an electronic communications system and that the statutory conditions in § 2702(a)(2) are satisfied. *See* 18 U.S.C. § 2711(2), § 2702(a)(2). Plaintiff should identify the particular communications allegedly protected, when and how they were transmitted to OpenAI, how and where they were stored or processed, and the facts supporting his assertion that OpenAI was acting as an ECS or RCS with respect to those communications. *See Low*, 900 F. Supp. 2d at 1022–24.

Plaintiff also has not adequately alleged a prohibited disclosure under § 2702. Section 2702(a) prohibits certain providers from "knowingly" divulging covered communications or subscriber records, subject to the statutory exceptions in §§ 2702(b) and (c). *See* 18 U.S.C. § 2702(a)–(c). Plaintiff alleges only that OpenAI "knowingly divulged" his communications and records to governmental entities. Compl. ¶ 133. The complaint identifies no governmental entity to which OpenAI allegedly disclosed the communications, no person who received them, no date or approximate date of disclosure, no particular communication or information disclosed, and no facts showing that any disclosure actually occurred. Plaintiff's March 2026 communications with OpenAI do not cure this deficiency, as OpenAI's statement that it lacked visibility into and

authority to comment on legal requests or government processes is not an admission that any disclosure occurred. Compl. ¶¶ 59–63. Plaintiff must also separate the two categories of material he alleges were disclosed. The SCA "differentiates between contents and record information": "contents" refers to "the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Privacy Litig.*, 750 F.3d at 1104–06. Disclosure of subscriber records is governed by § 2702(a)(3) and (c)(6), which turn on whether the recipient is a governmental entity. Plaintiff's allegation that OpenAI divulged both "the contents of Plaintiff's communications" and "records pertaining to Plaintiff," Compl. ¶ 133, therefore pleads two distinct theories, and he must plead the elements of each.

Nor does the allegation that OpenAI acted "without a warrant, court order, subpoena, or other lawful process" by itself state a § 2702 claim. Section 2702 regulates voluntary disclosure and contains its own exceptions, including disclosures authorized by § 2703 and disclosures made with specified forms of consent or as necessarily incident to the rendition of the service or protection of the provider's rights or property. 18 U.S.C. § 2702(a)–(b). Thus, Plaintiff must allege facts showing both a covered disclosure and why the disclosure was prohibited by § 2702 rather than merely asserting that no lawful process existed. *See id.*; *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026–27 (N.D. Cal. 2014) (distinguishing the elements of an unauthorized-access claim under § 2701 from an improper-disclosure claim under § 2702). Plaintiff need not negate hypothetical defenses with bare conclusions, but he must allege factual matter making the claimed violation plausible. If the alleged disclosure concerns subscriber records rather than contents, he must plead facts consistent with § 2702(a)(3), including disclosure to a governmental entity.

Plaintiff's § 2701 theory is also deficient. Section 2701(a) prohibits intentionally accessing without authorization, or intentionally exceeding authorization to access, "a facility through which an electronic communication service is provided" and thereby obtaining, altering, or preventing authorized access to a communication while it is in electronic storage. 18 U.S.C. § 2701(a). Plaintiff alleges John Does 1–10 "intentionally accessed, or caused OpenAI to disclose," his stored

communications. Compl. ¶ 132. Those are two different theories involving different conduct, and the complaint does not identify which theory Plaintiff intends to pursue.

If Plaintiff intends to proceed under § 2701(a), he must allege facts identifying the facility allegedly accessed, the particular defendant who accessed it, how that defendant accessed it, why the access was without authorization or exceeded the defendant's authorization, what communication in electronic storage was thereby obtained, altered, or rendered inaccessible, and when the access occurred. *See Konop*, 302 F.3d at 874. An allegation that a government defendant caused OpenAI to disclose information does not, without more, establish that the government defendant itself accessed a covered facility within the meaning of § 2701(a).

Further, § 2701(c)(1) excepts access authorized by the person or entity providing the electronic communication service. Thus, alleging that OpenAI accessed communications on its own service, without additional facts, does not state an unauthorized-access claim against OpenAI. *See* 18 U.S.C. § 2701(c)(1); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1026–27 (holding that an ECS provider is protected by § 2701(c)(1) from a claim based on its access to communications stored on its own servers). An allegation that a federal official requested a provider's disclosure is also not equivalent to alleging that the official personally accessed a facility without authorization.

Finally, Plaintiff must distinguish any § 2701 claim from any § 2702 claim and identify the defendant responsible for each alleged violation. A defendant who allegedly accessed a facility without authorization presents a different theory from a provider who allegedly divulged stored communications. Plaintiff must identify which defendant is alleged to have committed each access or disclosure violation. He may plead alternative or inconsistent theories, but the pleading must give fair notice and provide a factual basis for each. Fed. R. Civ. P. 8(d)(2)–(3); *Gibson*, 165 F.4th at 1288–90.

If Plaintiff chooses to replead Count VII, he must (1) identify whether he contends OpenAI was acting as an ECS, an RCS, or both, and the facts supporting that classification as to the particular material at issue; (2) whether the claim is under § 2701 or § 2702; and (3) facts showing why the access was unauthorized or why the disclosure was prohibited despite the exceptions in § 2702(b)–(c). Plaintiff should not rely solely on allegations that he believes a government agency

must have obtained his communications because OpenAI flagged his account. He must allege facts supporting the inference that the particular access or disclosure actually occurred.

**e. State Law Claims (Counts IV, V, and VI)**

Plaintiff invokes only supplemental jurisdiction over his contract, implied-covenant, and defamation claims. Compl. ¶ 7. Because no federal claim currently survives screening, the Court would decline to exercise supplemental jurisdiction over them. 28 U.S.C. § 1367(c)(3). Plaintiff does not invoke diversity jurisdiction,[1] and the complaint would not support it as pleaded, as the citizenship of OpenAI OpCo, LLC is determined by the citizenship of each of its members, none of which is alleged, and the complaint pleads no amount in controversy. *See Voltage Pictures, LLC v. Gussi, S.A. de C.V.*, 92 F.4th 815, 823 (9th Cir. 2024) ("The citizenship of a limited liability company is determined by the citizenship of its members.") (citing *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2016)). As such, the Court does not reach the merits of these claims. The following observations are offered to provide notice of defects Plaintiff may address if he repleads the state-law claims.

**i. Breach of Contract**

California law requires a contract, performance or excuse for nonperformance, defendant's breach, and resulting damages. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Plaintiff alleges he entered into a contract with OpenAI OpCo, LLC and attaches Terms of Use.

[1] "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, they "have an independent obligation to ensure that they do not exceed the scope of their jurisdiction." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004) (noting that district courts are "obligated to consider sua sponte whether [they] have subject matter jurisdiction"); *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) ("Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists.") (cleaned up).

There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331 and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A cause of action "arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1386 (9th Cir. 1989). A district court has diversity jurisdiction where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state. 28 U.S.C. § 1332(a)(1)-(2).

Compl. ¶¶ 11, 86–90, 113–16 & Ex. H. But he does not identify an express provision requiring OpenAI to generate particular satire or advocacy content, forbidding this type of policy warning, or requiring a substantive response to an appeal. He also does not specify the lost service value or other concrete contract damages attributable to a breach. Plaintiff should identify the applicable provision of the parties' contract, how OpenAI violated it, and his resulting damage. The Court also notes the complaint does not establish a contract with OpenAI Group PBC merely by grouping the entities.

**ii. Implied Covenant**

"'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 371 (1992) (quoting *Foley v. Interactive Data Corp*., 47 Cal.3d 654, 683–84 (1988)). The implied covenant of good faith and fair dealing protects the benefits of a contract but cannot contradict its express terms. *Id.* at 374 ("[I]mplied terms should never be read to vary express terms."). Plaintiff should identify the contractual benefit allegedly frustrated by the warning or the unanswered inquiries, explain how OpenAI exercised contractual discretion in bad faith, and distinguish this theory from any asserted breach of the same express term. The October 2025 support message says that its response was AI-generated and may contain errors. Compl. ¶ 37. Without a pleaded contractual commitment, an assurance that a specialist would respond does not itself establish a breach of the subscription contract.

**iii. Defamation**

"Defamation is the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or that causes special damage." *Charney v. Standard Gen., L.P.*, 10 Cal. App. 5th 149, 157 (2017). "Publication, which may be written or oral, is defined as a communication to some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made." *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1179 (2000).

Plaintiff alleges the "Fraudulent Activities" statement "was sent to Plaintiff via email, recorded in OpenAI's internal systems, and upon information and belief shared with OpenAI

United States District Court
Northern District of California

employees responsible for account review." Compl. ¶ 126. However, a notice sent only to Plaintiff is not a publication. As currently pleaded, Plaintiff does not identify a particular third-party recipient, the communication or its context, or facts showing that the "Fraudulent Activities" policy classification was understood as a factual accusation of criminal fraud rather than an account-policy warning. He should plead facts supporting any unprivileged publication and any claimed reputational injury. Further, the only allegation against Altman is that he "is liable for the defamatory statement as CEO with authority over content moderation policies." *Id.* ¶ 128. But Altman's CEO title alone does not establish personal liability, as Plaintiff must plead facts showing his direction, authorization, or participation. *Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 503–04 (1986).

**f. Count VIII: Declaratory Judgment**

Count VIII alleges a claim for "Declaratory Judgment." Compl. ¶¶ 135-39. The Declaratory Judgment Act supplies a remedy in a case otherwise within the Court's jurisdiction. 28 U.S.C. §§ 2201–02. However, to the extent Plaintiff attempts to assert standalone claims for declaratory relief, he may not do so. "[D]eclaratory relief is not an independent cause of action," only a remedy. *VIA Techs., Inc. v. SONICBlue Claims LLC*, 2010 WL 2486022, at *3 (N.D. Cal. June 16, 2010); *see also Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) ("The Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court. . . . It only permits the district court to adopt a specific remedy when jurisdiction exists.") (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–74 (1950)); *Spangler v. Selene Fin. LP*, 2016 WL 5681311, at *7 (N.D. Cal. Oct. 3, 2016) (dismissing claim for declaratory judgment because declaratory relief is not an independent cause of action and plaintiff's complaint otherwise failed to state a claim under which any relief could be granted). To the extent Count VIII restates Counts I through VII, it is duplicative and adds nothing to Plaintiff's allegations. Accordingly, if Plaintiff repleads a legally supportable claim, he may request appropriate declaratory relief in his prayer for relief rather than as a duplicate standalone cause of action.

6. **Frivolousness**

Finally, the Court notes that some of Plaintiff's allegations appear to be frivolous. "'A

complaint . . . is frivolous where it lacks an arguable basis either in law or in fact.'" *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). The definition of frivolousness "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke*, 490 U.S. at 325. When determining whether to dismiss a complaint as "frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i), the court has "'the unusual power to pierce the veil of the complaint's factual allegations,'" meaning it "is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton*, 504 U.S. at 32 (quoting *Neitzke*, 490 U.S. at 327). Frivolous claims include "'claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'" *Id.* (quoting *Neitzke*, 490 U.S. at 328). "An in forma pauperis complaint may not be dismissed . . . simply because the court finds the plaintiff's allegations unlikely." *Id.* at 33. But "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* As the Ninth Circuit has explained, frivolous litigation "is not limited to cases in which a legal claim is entirely without merit . . . . [A] person with a measured legitimate claim may cross the line into frivolous litigation by asserting facts that are grossly exaggerated or totally false." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1060–61 (9th Cir. 2007).

Here, several of Plaintiff's allegations approach this standard. Plaintiff alleges "systematic FBI surveillance and retaliation," including "a warrantless home invasion on November 1, 2025," "physical interception of mail packages," "coordination with Amazon.com to inspect packages," and "cyber attacks on his internet connectivity," Compl. ¶ 22; that ChatGPT engaged in "gaslighting" by "systematically presenting false dichotomies that excluded surveillance as a possibility" when discussing his network anomalies, *id.* ¶ 33; that OpenAI "may be the victim of a sophisticated breach, potentially by state-level actors," with "unauthorized access to your response generation pipeline" and "targeted response manipulation affecting specific user accounts," *id.* ¶ 34; and that the model showed "extreme reluctance to even type the acronym 'FBI,'" and that "jamming," "DNS poisoning," and "package retaping" were each explained away to conceal

interference, *id.*, Ex. B ¶ 32. While it is possible Plaintiff has an honest belief in these allegations, the undersigned finds they approach the line described in cases finding that pleadings "fall further out on the spectrum past implausible and toward the delusional." *Spitters v. Miceli*, 2018 WL 6816110, at *5 (N.D. Cal. Sept. 24, 2018), *report and recommendation adopted*, 2018 WL 6822626 (N.D. Cal. Oct. 15, 2018) ((dismissing as frivolous complaint where plaintiff alleged, among other things that defendant was a super-spy and an assassin who was using a fabricated identity to "get at" him); *see also Seelig v. Cent. Intel. Agency*, 2025 WL 2237672, at *3 (N.D. Cal. Aug. 6, 2025), *report and recommendation adopted*, 2025 WL 2418520 (N.D. Cal. Aug. 21, 2025) (dismissing complaint that alleged several government actors were conspiring to surveil and harass plaintiff); *Hutchinson v. San Francisco Police Dep't*, 2024 WL 4529658, at *2 (N.D. Cal. Sept. 9, 2024), *report and recommendation adopted,* 2024 WL 4529568 (N.D. Cal. Oct. 17, 2024) (allegations that the San Francisco Police and Fire Departments "installed cameras in her home, filmed members of those departments raping her, filmed her dreams as porn, sold the videos online for $150 million, and murdered her children in spiritual warfare" fall "far out on the spectrum past implausible and toward the delusional"); *Lindblad v. Bolanos*, 2022 WL 2402646, at *9 (N.D. Cal. July 4, 2022), *aff'd,* 2023 WL 8047762 (9th Cir. Nov. 21, 2023) (dismissing as frivolous allegations that a county sheriff "is involved with cartels and organized crime" and that a foreign government was engaged in a scheme to "redraw borders and extract the wealth from the United States"). If Plaintiff chooses to file an amended complaint, he should be mindful that it could be dismissed for "asserting facts that are grossly exaggerated or totally false." *Molski*, 500 F.3d at 1060–61.

## V. CONCLUSION

For the reasons above, the Court **GRANTS** the application to proceed in forma pauperis but finds the complaint fails to state a claim under 28 U.S.C. § 1915(e). However, given the pro se status of Plaintiff, and because it is not clear that the deficiencies of the complaint could not be cured by amendment, the Court shall grant Plaintiff the opportunity to file an amended complaint. Accordingly, the Court **ORDERS** Plaintiff to file an amended complaint by November 12, 2026.

**A. Requirements for Amended Complaint**

The Court advises Plaintiff that an amended complaint replaces a prior complaint, meaning the prior complaint is treated as non-existent. *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Thus, nothing from the prior complaint shall be considered or deemed part of the pleadings in this action, and the amended complaint must include all the facts and claims to be presented and all the defendants that are to be sued. In addition, any amended complaint must include the following sections:

> **<u>Caption Page</u>**
> On the first page, list the names of the defendant(s), the case number used in this order (26-cv-10641-TSH), the title ("FIRST AMENDED COMPLAINT"), and write "Demand for Jury Trial" if you want your case to be heard by a jury.
>
> **<u>Form of Pleadings</u>**
> The factual allegations and claims must be written in numbered paragraphs, each limited as far as practicable to a single set of circumstances.
>
> **<u>Subject Matter Jurisdiction</u>**
> The first numbered paragraph in your complaint (labeled "Jurisdiction") should explain why this Court has the power to decide this kind of case. A federal court can hear a case based on a federal question jurisdiction (a violation of federal law under 28 U.S.C. § 1331) or diversity jurisdiction (when all plaintiffs and all defendants are citizens of different states disputing more than $75,000) under 28 U.S.C. § 1332.
>
> **<u>Parties</u>**
> In separate paragraphs for each party, identify the plaintiff(s) and defendant(s) in the case.
>
> **<u>Statement of Facts</u>**
> Explain the important facts in numbered paragraphs, describing how the defendant(s) violated the law and how you have been injured. If any document is attached to the amended complaint, Plaintiff must explain in the numbered factual allegations what the document is alleged to show and how it relates to a particular defendant and claim.
>
> **<u>Claims</u>**
> For each claim, include a separate heading identifying the specific law allegedly violated. Under each heading, state in separately numbered paragraphs the facts supporting that claim, including what each defendant did, when the conduct occurred, the names of the persons involved, how each defendant's actions violated the identified law, and how those actions harmed you.

Plaintiff should note that although leave to amend has been granted, it is not for the

purposes of adding new claims or defendants, other than as requested by the Court. Plaintiff should focus the amended complaint on claims and defendant(s) relating solely to issues discussed herein.

**B. Assistance for Self-Represented Litigants**

The Court encourages Plaintiff to seek assistance from the Federal Pro Bono Project, a free service offered by the Justice & Diversity Center of the Bar Association of San Francisco. You may request an appointment by emailing fedpro@sfbar.org or calling 415-782-8982. At the Federal Pro Bono Project, you will be able to speak with an attorney who may be able to provide basic legal help but not representation. More information is available at https://www.cand.uscourts.gov/pro-se-litigants/.

Plaintiff may also wish to obtain a copy of this District's *Handbook for Litigants Without a Lawyer*, which provides instructions on how to proceed at every stage of your case. The handbook is available in person at the Clerk's Office and online at: https://www.cand.uscourts.gov/pro-se-litigants/.

**IT IS SO ORDERED.**

Dated: October 13, 2026

THOMAS S. HIXSON
United States Magistrate Judge